*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
August 12, 2026
10:27 AM

*In re* VARAMT, Minor.

No. 377938
Oakland Circuit Court
Juvenile Division
LC No. 2024-887473-NA

Before: ACKERMAN, P.J., and BAZZI and LIEVENSE, JJ.

PER CURIAM.

Respondent appeals the trial court's order terminating his parental rights to the minor child, VAT, under MCL 712A.19b(3)(b)(*i*) and (j). We affirm.

## I. FACTS

After VAT's participation in an interview at CARE House of Oakland County, petitioner, the Michigan Department of Health and Human Services, filed a petition to terminate respondent's parental rights to VAT. The petition invoked MCL 712A.19b(3)(b)(*i*), (g), (j).[1] Petitioner alleged that respondent sexually and physically abused VAT when she was five to seven years old. Respondent's acts of alleged abuse included vaginal and oral penetration of VAT, as well as burning and cutting her. At the adjudication hearing, VAT testified that respondent touched her chest area, vaginal area, and buttocks with his hand over her clothing. VAT also testified that respondent punched, cut, and burned her, leaving a mark on her face and scars on her legs. The trial court found that VAT came within its jurisdiction under MCL 712A.2(b)(1) and (2). At the initial dispositional hearing, the parties stipulated to use of the trial testimony for determination of the statutory grounds for termination. The trial court found that aggravated circumstances existed under MCL 722.638(1)(a)(*iii*), which excused petitioner from making reasonable efforts toward reunification. The trial court took testimony from several witnesses at a best-interest hearing and

---

[1] The petition also invoked MCL 712A.19b(3)(k)(*ii*), although petitioner later withdrew that allegation.

concluded that termination of respondent's parental rights was in the child's best interests. This appeal followed.

## II. JURISDICTION

Respondent first argues that petitioner failed to support its petition with a preponderance of the evidence that the statutory requirements of MCL 712A.2(b) had been met so as to establish jurisdiction over VAT. We disagree.

In Michigan, child protective proceedings include the adjudicative phase and the dispositional phase. *In re Brock*, 442 Mich 101, 108; 499 NW2d 752 (1993). The petitioner initiates the proceedings by filing "a petition containing facts that constitute an offense against the child under the juvenile code (i.e., MCL 712A.2(b))." *In re Sanders*, 495 Mich 394, 405; 852 NW2d 524 (2014). In general, a court determines whether it can take jurisdiction over the child during the adjudicative phase. *Id*. In order for the trial court to acquire jurisdiction, the trial court or jury "must determine by a preponderance of the evidence that the child comes within the statutory requirements of MCL 712A.2." *In re Brock*, 442 Mich at 108-109. This Court reviews the trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact. *Id*. "A finding is clearly erroneous if 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *In re KV*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 374236); slip op at 4 (citation omitted).

The trial court found statutory grounds to exercise jurisdiction under MCL 712A.2(b)(1) and (2), which, in relevant part, give a trial court

> (b) [j]urisdiction in proceedings concerning a juvenile under 18 years of age found within the county:
>
> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. . . .
>
> * * *
>
> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. As used in this sub-subdivision, "neglect" means that term as defined in section 2 of the child abuse and neglect prevention act, 1982 PA 250, MCL 722.602.

VAT was clearly subject to "a substantial risk of harm to . . . her mental well-being . . . ." VAT struggled through her testimony. Twice VAT testified that she was close to having a panic attack and that she needed to breathe. VAT expressed that when she lived with respondent, she was afraid and felt helpless against respondent's actions. VAT testified that she currently felt safe

living with her mother and that she felt protected by her mother and grandparents. VAT began therapy when she was in fourth grade. VAT told her mother, her therapist, and the interviewer at CARE House of Oakland County about respondent's abuse. The trial court did not err in concluding that VAT's testimony established jurisdiction under MCL 712A.2(b)(1) by a preponderance of the evidence. And because the trial court was only required to find that one statutory basis for jurisdiction existed, the trial court properly exercised jurisdiction over VAT. See *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004) ("To properly exercise jurisdiction, the trial court must find that a statutory basis for jurisdiction exists."). Respondent has failed to establish that reversal is required.

## III. AGGRAVATED CIRCUMSTANCES

Respondent next argues that the trial court erred in finding that aggravated circumstances existed, and therefore petitioner was not required to make reasonable efforts toward reunification. We disagree.

If the trial court finds that it has jurisdiction over a minor, the dispositional phase follows. *In re AMAC*, 269 Mich App 533, 536; 711 NW2d 426 (2006). "The dispositional phase involves a determination of what action, if any, will be taken on behalf of the child." *Id*. at 537. During the dispositional phase, the petitioner must make reasonable efforts toward reunification unless, as provided in MCL 712.19a(2)(a), the trial court determines that the respondent has subjected the child to aggravated circumstances pursuant to MCL 722.638(1) and (2). *In re Barber/Espinoza*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 167745); slip op at 1. If a case involves aggravated circumstances under MCL 722.638(1)(a), the petitioner may request the termination of a respondent's parental rights at the initial dispositional hearing.[2] *In re Simonetta*, 340 Mich App 700, 708; 987 NW2d 919 (2022). Aggravated circumstances are delineated in MCL 722.638(1)(a). "The trial court must find by clear and convincing evidence that aggravated circumstances exist in order to excuse the reasonable-efforts requirement." *In re Barber/Espinoza*, ___ Mich at ___; slip op at 4. If the trial court makes findings regarding aggravated circumstances consistent with both MCL 722.638(1) and (2), the petitioner is not required to provide reasonable efforts toward reunification. *Id*. at ___; slip op at 9. This Court reviews for clear error a trial court's finding that aggravated circumstances have been proved by clear and convincing evidence. MCR 3.977(K).

In this case, petitioner asked the trial court to find that aggravated circumstances existed under MCL 722.638(1)(a)(*iii*), which provides:

> (a) The department determines that a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the

---

[2] Indeed, the petitioner *must* seek termination of parental rights at the initial disposition in a petition mandated by MCL 722.638(1) "if a parent is a suspected perpetrator or is suspected of placing the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate the risk . . . ." MCL 722.638(2). See also *In re Barber/Espinoza*, ___ Mich at ___; slip op at 9 n 5 (discussing the procedural requirements imposed on the Department of Health and Human Services under MCL 722.638).

child's home, has abused the child or a sibling of the child and the abuse included 1 or more of the following:

\* \* \*

(*iii*) Battering, torture, or other serious physical harm.

As the Supreme Court explained in *In re Barber/Espinoza*, ___ Mich at ___; slip op at 9-12, MCL 722.638(1)(a) involves a two-part inquiry. First, the trial court must find that a person identified in MCL 722.638(1)(a) " 'has abused the child [or a sibling of the child] . . . .' " *Id*. at ___; slip op at 9, quoting MCL 722.638(1)(a). For purposes of this inquiry, courts should look at the definition of child abuse in MCL 722.622(g), *In re Barber/Espinoza*, ___ Mich at ___; slip op at 10, which states,

> "Child abuse" means harm or threatened harm to a child's health or welfare that occurs through nonaccidental physical or mental injury, sexual abuse, sexual exploitation, or maltreatment, *by a parent, a legal guardian, any other person responsible for the child's health or welfare*, a teacher, a teacher's aide, a member of the clergy, or an individual 18 years of age or older who is involved with a youth program. [MCL 722.622(g) (emphasis added).]

Second, "[s]uch abuse committed by a listed offender must also have 'included' certain circumstances listed under MCL 722.638(1)(a)(*i*) through (*vi*)." *In re Barber/Espinoza*, ___ Mich at ___; slip op at 11.

Here, there is no dispute that respondent is a qualifying listed offender, so the fundamental question is whether petitioner can prove that the abuse it alleges "included" the circumstances in MCL 722.638(1)(a)(*iii*) on which it relies. That provision requires that petitioner prove that respondent abused VAT in a way that included "serious physical harm," which MCL 722.622(ee) provides is defined by MCL 750.136b. That section, in turn, defines "serious physical harm" as "any physical injury to a child that seriously impairs the child's health or physical well-being, including, but not limited to, brain damage, a skull or bone fracture, subdural hemorrhage or hematoma, dislocation, sprain, internal injury, poisoning, burn or scald, or severe cut." MCL 750.136b(1)(f).

VAT's testimony at trial established that respondent physically assaulted VAT by burning and cutting her. VAT testified several times that respondent hurt her. VAT further testified that respondent hit, punched, and kicked her body. VAT reported that respondent's abuse left scars and bruises on her legs. When asked what respondent used to burn her, VAT replied, "I don't know. Possibly a lighter?" VAT showed the trial court a dark mark on her cheek caused by respondent hitting her with a fist "really, really hard." Upon further questioning, VAT testified that she thought that respondent "maybe" had something hot in his hand and "maybe it got to my face." VAT explained that she had two lines scarred on the back of her leg from respondent cutting her. VAT was bothered because she did not know why these things had happened to her. She did not believe that anyone saw respondent cutting, burning, or punching her and stated many times that she was safe now that she no longer lived in respondent's home. The trial court concluded that VAT was a credible witness.

-4-

This clear and convincing evidence supported a finding that respondent abused VAT by harming her health and welfare through nonaccidental physical and mental injury. Respondent challenges the trial court's conclusion that MCL 722.638(1)(a)(*iii*) is satisfied by a finding that he "inappropriately touched" VAT, but that was not the trial court's only finding. Rather, VAT testified that respondent punched, cut, and burned her, leaving scars on her face and legs, which the trial court found credible. Respondent's efforts at critiquing these findings—such as pointing to some uncertainty in VAT's testimony about the circumstances of being burned, or a lack of medical records about her injuries—are unpersuasive. At a bare minimum, VAT's testimony that respondent punched her in the face with a closed fist and left a dark mark on her cheek would support the trial court's aggravated circumstances finding. The trial court therefore properly found that clear and convincing evidence supported a finding of abuse that included serious physical harm under MCL 722.638(1)(a)(*iii*). Accordingly, the trial court properly determined that petitioner was not required to make reasonable efforts toward reunification.

## IV. STATUTORY GROUNDS FOR TERMINATION

Next, respondent argues that the trial court clearly erred by finding that the evidence established statutory grounds for termination. Respondent asserts that VAT's testimony, the only evidence of the abuse allegations, was so vague that it failed to establish any type of sexual or physical abuse. We do not agree.

Once a trial court has established jurisdiction over a child and that aggravated circumstances justify excusing petitioner from attempting reunification, it may then determine whether statutory grounds for termination exist and whether termination is in the child's best interests. *In re Barber/Espinoza*, ___ Mich at ___; slip op at 4. To terminate parental rights, the trial court must find that at least one statutory ground under MCL 712A.19b(3) has been established by clear and convincing evidence. *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). This Court reviews for clear error a trial court's finding that a statutory ground for termination has been proved by clear and convincing evidence. *Id*. The trial court terminated respondent's parental rights under MCL 712A.19b(3)(b)(*i*) and (j), which permit termination of parental rights under the following circumstances:

> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

> * * *

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The trial court found that VAT's testimony was credible and provided clear and convincing evidence to support the statutory grounds for termination under MCL 712A.19b(2)(b)(*i*). VAT

-5-

testified that respondent touched her chest area, vaginal area, and buttocks with his hand. She indicated that respondent's actions scared her because she did not know what was happening to her. VAT also testified that respondent hit, punched, and burned her. VAT displayed a mark on her face and scars on her leg for the trial court to see. The trial court was able to observe VAT's demeanor while testifying and found her to be a credible witness. "MCR 2.613(C) requires that in applying the principle that findings of fact may not be set aside unless clearly erroneous, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989). This Court should not disturb the trial court's credibility determination. Additionally, the trial court found that Detective Sergeant Les Rochefort's actions after reviewing VAT's CARE House interview bolstered VAT's credibility. The trial court noted that after reviewing VAT's CARE House interview, Detective Sergeant Rochefort began an investigation to determine whether respondent committed criminal sexual conduct or physical abuse. Detective Sergeant Rochefort submitted a report to the Wayne County Prosecutor's Office for criminal charges. Detective Sergeant Rochefort also contacted Children's Protective Services to investigate allegations of abuse against VAT. Based on this evidence and the trial court's finding of credibility, clear and convincing evidence supported the trial court's conclusion that termination of respondent's parental rights was warranted pursuant to MCL 712A.19b(3)(b)(*i*).

Next, "[t]he harm contemplated under MCL 712A.19b(3)(j) includes emotional harm as well as physical harm." *In re Sanborn*, 337 Mich App 252, 279; 976 NW2d 44 (2021). Respondent denied any responsibility for the court proceedings and blamed the situation on VAT's nonrespondent-mother and another of respondent's former partners. Respondent testified that the women had conspired and coached VAT to make the allegations of abuse against him. The trial court did not find respondent to be credible but found VAT to be credible. Shannon Conz, a clinical psychologist with the Oakland County Psychological Clinic who performed psychological evaluations on VAT and respondent, testified that reunification would have a detrimental impact on VAT's already precarious mental health condition. Based on this evidence and the trial court's credibility findings, the trial court did not clearly err by finding that VAT was reasonably likely to be harmed if returned to respondent's home, such that respondent's parental rights could be terminated under MCL 712A.19b(3)(j). The trial court did not clearly err by finding that statutory grounds for termination were supported by clear and convincing evidence.

## V. BEST INTERESTS

Finally, respondent argues that the trial court clearly erred by determining that termination of respondent's parental rights was in VAT's best interests. We disagree.

Once a statutory ground for termination has been established, the trial court must find that termination of parental rights is in the child's best interests before it can terminate parental rights. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App at 90. This Court reviews for clear error the trial court's findings regarding a child's best interests. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014).

-6-

Again, the trial court must terminate a parent's rights to a child if the petitioner establishes a statutory ground for termination by clear and convincing evidence and a preponderance of the evidence on the whole record demonstrates that termination of parental rights is in the child's best interests. MCL 712A.19b(5). As explained in *In re White*, 303 Mich App at 713-714:

> To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [Citation omitted.]

Respondent argues that the trial court's findings were against the great weight of the evidence and were contrary to uncontroverted testimony. Specifically, respondent asserts that the trial court erred by finding that the lack of a bond between him and VAT weighed in favor of termination. Respondent's witnesses testified that he and VAT shared a strong bond, but the trial court did not find their testimony to be credible. VAT testified that she was very afraid when she lived with respondent. After leaving respondent's home, however, she felt safe and protected in the care of her mother and grandparents. Conz testified that after speaking with respondent and administering psychological testing, she believed that respondent did not prioritize VAT's needs. Conz also found no bond between respondent and VAT and opined that continued contact with respondent would be detrimental to VAT's well-being.

In addition, VAT provided ample testimony, which the trial court found credible, that respondent's conduct toward her amounted to criminal sexual conduct involving inappropriate sexual touching of VAT's chest, vaginal area, and buttocks. VAT testified that she was afraid and did not understand what was happening to her.

A trial court must also consider whether termination is appropriate in light of relative placement. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016), superseded by statute on other grounds as noted in *In re Boshell/Shelton*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 371973); slip op at 10. "A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *In re Olive/Metts*, 297 Mich App at 43. The trial court considered whether termination was appropriate in light of VAT's placement with her mother. The trial court gave great weight to testimony from Conz and Jacqueline Kisse, the Children's Protective Services specialist assigned to the case. The trial court noted that Conz expressed concern that allowing respondent to retain his parental rights would allow respondent to seek custody of VAT, which would place VAT at significant risk. The trial court also cited Kisse's testimony that VAT would be placed at risk if respondent's parental rights were not terminated. The trial court considered this testimony along with other testimony to reach its conclusion that termination was in VAT's best interests.

We conclude that the trial court properly found that a preponderance of the evidence supported a finding that termination of respondent's parental rights was in VAT's best interests. Its judgment is affirmed.

/s/ Matthew S. Ackerman
/s/ Mariam Saad Bazzi
/s/ Andrew J. Lievense